Smith v. Lee, et at. 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-050-CV

     WILLIE SMITH,
                                                                                              Appellant
     v.

     SGT. LEE, ET AL.,
                                                                                              Appellees
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 26,677
                                                                                                    

O P I N I O N
                                                                                                    

      Willie Smith, a prison inmate, brought a pro se action in forma pauperis against Sgt. Lee, an
employee of the Hughes Unit of the Texas Department of Criminal Justice, Institutional Division,
and Jack M. Garner, the chief warden at the Hughes Unit. Smith alleged that Lee and Garner had
violated Smith's civil rights while imprisoned at the Hughes Unit. Before the defendants were
served with process, the court dismissed the cause as being "frivolous and/or malicious."


 The
court specified that Smith's petition was dismissed because "[t]he claim has no arguable basis in
law or fact."



      Smith complains that the trial court erred by dismissing the complaint for having no arguable
basis in law or fact. Section 13.001 of the Texas Civil Practice and Remedies Code provides:
(a) A court in which an affidavit of inability to pay under Rule 145, Texas Rules of Civil
Procedure, has been filed may dismiss the action on a finding that:
(1) the allegation of poverty in the affidavit is false; or
(2) the action is frivolous or malicious.
(b) In determining whether an action is frivolous or malicious, the court may consider
whether:
(1) the action's realistic chance of ultimate success is slight;
(2) the claim has no arguable basis in law or in fact; or
(3) it is clear that the party cannot prove a set of facts in support of the claim.
(c) An action may be dismissed under Subsection (a) as frivolous or malicious either
before or after service of process.




      The federal counterpart of section 13.001 is section 1915(d) of Title 28, which authorizes
federal courts to dismiss in forma pauperis suits "if the allegation of poverty is untrue, or if
satisfied that the action is frivolous or malicious."


 While the federal statute does not contain
guidelines for determining when a suit is frivolous, a dismissal is proper if the claim has no
arguable basis in law or fact.


 The rationale behind granting this power to trial courts is to
"prevent abusive or captious litigation" when the in forma pauperis litigant "lacks an economic
incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."


 "To this end, the
statute accords judges not only the authority to dismiss a claim based on an indisputably meritless
legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations
and dismiss those claims whose factual contentions are clearly baseless."



      An example of an indisputably meritless legal theory is a claim of infringement of a legal
interest that clearly does not exist.


 An example of a factually baseless contention is a claim
describing fantastic or delusional scenarios.



      The trial court should be allowed broad discretion when determining whether or not a suit
filed pursuant to Rule 145 of the Texas Rules of Civil Procedure should be dismissed as frivolous
or malicious under section 13.001.


 Therefore, we must decide whether the trial court abused
its discretion in determining that Smith's suit was frivolous or malicious.
      Smith's petition alleged that on January 1, 1992, he was unlawfully placed on "container
restriction" without a hearing and that on March 5, 1992, he was placed on "handcuff restriction"
without a hearing. He alleged that his action was brought under sections 22.01 and 22.02 of the
Texas Penal Code,


 section 39.021 of the Penal Code,


 and articles 6166a and 6166g of the Texas
Revised Civil Statutes,


 none of which provide any basis for his claims.
      Neither the Penal Code nor the civil statutes establishing and governing penitentiaries creates
a private action for the alleged wrongs of prison officials.


 Therefore, the court properly
dismissed the claim based on the state statutes because the action was based on an indisputably
meritless legal theory.



      However, Smith also alleged a cause of action under Title 42, section 1983, of the United
States Code.


 He alleged that he was denied equal protection and due process of law because he
was disciplined without a hearing. According to Smith, both Lee and Garner intentionally
discriminated against Smith because of his membership in a protected class.
      To state a claim under the Equal Protection Clause, a section 1983 plaintiff must allege that
a state actor intentionally discriminated against the plaintiff because of membership in a protected
class.


 He alleges that, because his cup was confiscated and he was not allowed to have coffee
and milk at any meals, and because he had to walk to the shower in handcuffs and was placed in
fear of bodily injury when violence and terror reigns at the administrative segregation unit, he was
denied the rights and privileges enjoyed by others. According to Smith's petition, none of the "B-status" inmates were handcuffed on the A-wing of the Hughes Unit. Furthermore, Smith alleged
that, although none of the inmates in administrative segregation wore handcuffs, on March 5,
1992, he was placed in handcuffs. This is an equal protection claim because it alleges that,
without justification, he was treated unfairly compared with other prisoners who were similarly
situated.


 However, the court properly dismissed the equal protection action because Smith's
petition fails to allege specific facts supporting the claim that he was a member of a protected
class.



      Finally, we address Smith's claim under the Due Process Clause. Prisoners may not be
deprived of life, liberty, or property without due process of law.


 We examine procedural due
process questions in two steps: the first asks whether there exists a liberty or property interest that
has been interfered with; the second examines whether the procedures attendant upon that
deprivation were constitutionally sufficient.


 
      The types of interests that constitute "liberty" and "property" for Fourteenth Amendment
purposes are not unlimited; the interest must rise to more than "an abstract need or desire" and
must be based on more than "a unilateral hope."


 Rather, an individual claiming a protected
interest must have a legitimate claim of entitlement to it. Protected liberty interests "may arise
from two sources—the Due Process Clause itself and the laws of the States."


 
      The United States Supreme Court has rejected the notion that any change in the condition of
confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke
the protection of the Due Process Clause.


 As long as the conditions or degree of confinement
to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise
violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment
by the prison authorities to judicial oversight.


 
      The Supreme Court has held, however, that state law may create enforceable liberty interests
in the prison setting.


 The Supreme Court has found, for example, that certain regulations
granted inmates a protected interest in parole, in good-time credits, in freedom from involuntary
transfer to a mental hospital, and in freedom from more restrictive forms of confinement within
the prison.


 However, the fact that certain state-created liberty interests have been found to be
entitled to due process protection, while others have not, is not indicative of what interests are
more significant than others; rather, the method of inquiry in these cases has always been to
examine closely the language of the relevant statutes and regulations.



      According to the Supreme Court, most of the procedural due process cases in the prison
context have turned on the presence or absence of language creating "substantive predicates" to
guide the official discretion of prison officials.


 Furthermore, the Supreme Court has articulated
a requirement that the regulations contain "explicitly mandatory language," i.e., specific directives
to the decisionmaker that if the regulations' substantive predicates are present, a particular
outcome must follow, in order to create a liberty interest.



      Smith's petition raised a potential section 1983 claim for violation of a liberty interest entitled
to the protection of the Due Process Clause. Because prison inmates' complaints are to be
construed liberally, we hold that Smith's allegations were sufficient to allege a violation of his
rights under the Fourteenth Amendment.



      We make no comment on the merits of Smith's claim or whether he could avoid a summary
judgment being granted against him. However, it is impossible to determine from his petition
whether the applicable disciplinary procedures at the Hughes Unit created a liberty interest entitled
to the protection of the Due Process Clause, or whether such protection were denied in violation
of the Fourteenth Amendment. Applying the standard set out in Neitzke, we do not believe that
Smith's claims were based on an "indisputably meritless legal theory" or that his factual
allegations were "clearly baseless."



      We sustain Smith's point as to the Due Process claim under section 1983 and hold that the
court's dismissal of his suit was unreasonable.


 We reverse the judgment and remand the cause
for further proceedings in accordance with this opinion.
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed August 5, 1992
Do not publish